```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF ALABAMA
                    NORTHERN DIVISION
```

KENNY HARDEN,                    )
                                 )
    Plaintiff,                   )
                                 )
vs.                              )    CIVIL ACTION 09-00841-KD-B
                                 )
KENNETH ARLIN PEEK, JR.,         )
*et al.*,                        )
                                 )
    Defendants.                  )

## REPORT AND RECOMMENDATION

This case is before the Court on Plaintiff Kenny Harden's Motion to Remand (Doc. 4), which was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Based upon a careful review of Plaintiff's motion, supporting briefs, and the briefs in opposition, the undersigned RECOMMENDS that Plaintiff's Motion to Remand be DENIED.

## I. Background

On January 23, 2009, Plaintiff Kenny Harden initially filed this wrongful death action in the Circuit Court of Dallas County, Alabama, as the personal representative of the estate of Javis Toto. (Doc. 1, Ex. 1). The crux of his claim is that Mr. Toto was killed on August 15, 2008, when the vehicle in which he was traveling as a passenger was struck by a vehicle operated by Defendant Kenneth Arlin Peek, Jr. Plaintiff has named Peek as a Defendant, as well as Poch Staffing, Inc., d/b/a Trilliam Construction Services. According to Plaintiff, Peek was acting within the line of and scope of his employment with Defendant Poch Staffing, Inc. at the time of

the accident.  Plaintiff's Complaint includes a claim for unspecified punitive damages under the Alabama Wrongful Death Act. (Doc. 1, Ex. 2).

Defendant Peek filed a Notice of Removal, which Defendant Poch consented to, on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441. <u>Harden v. Peek</u>, Civil Action No. 09-00091-KD-B, S.D. Alabama. (Doc. 1).  In the Notice, Peek argued that Plaintiff and Defendants are citizens of different states, and that the court can readily deduce that Plaintiff's claim seeks damages in excess of the $75,000 jurisdictional amount.  Peek further argued that wrongful death is, by its nature, so substantial as to make it readily apparent that the amount in controversy requirement is satisfied.  Plaintiff sought remand on the ground that Defendant Peek had failed to meet his burden of showing by a preponderance of evidence that the amount in controversy was in excess of this Court's jurisdictional minimum. (<u>Id.</u> at Doc. 3). Upon review, the unsigned held that there was nothing about Plaintiff's general allegation, of wanton/reckless conduct on the part of Defendant Peek, that standing alone could lead one to readily conclude that the amount in controversy in this case exceeds $75,000, as required by the Eleventh Circuit's <u>Lowery v. Alabama Power Co.</u>, 483 F.3d 1184 (11th Cir. 2007) decision. Thus, the undersigned recommended that Plaintiff's Motion to Remand be granted.  In an Order dated May 15, 2009, the District Court remanded this case to the Circuit Court of Dallas County.(<u>Id.</u> at Doc. 18).

On December 21, 2009, Defendant Poch Staffing, Inc. filed a

2

second Notice of Removal (Doc. 1), which was joined in by Defendant Peek. Defendants assert that this case is removable because there is complete diversity of citizenship, and because the amount in controversy exceeds $75,000. As grounds for Removal, Defendants have relied upon the arguments previously advanced, that is, that wrongful death is, by its nature, so substantial as to make it readily apparent that the amount in controversy requirement is satisfied. Defendants also rely upon an email[1] from Plaintiff's counsel, dated December 3, 2009, offering to settle Plaintiff's claim for $1.5 million. According to Defendants, the email constitutes "other paper" that may be used to establish that the jurisdictional amount has been met.

Plaintiff, in turn, filed the instant Motion to Remand (Doc. 4). In his motion, Plaintiff argues that Defendants' second removal is nothing more than an attempt to have this Court reconsider its prior Order remanding this action to Dallas County, and as such, it is improper. According to Plaintiff, 28 U.S.C. § 1446(b) allows a defendant to remove a previously remanded case where subsequent pleadings or events reveal a new and different basis for removal; however, in this action, Defendant's Notice of Removal is not

---

[1]The text of the email is as follows:

Paul:

Gil told me that you and he talked on the phone about this case today. He asked me to get the following settlement demand to you-$1.5 million each for Dominguez and Toto from both defendants, for a total settlement of $3 million. Also, please get back with us on the available insurance coverage as soon as possible.

premised on a new and different basis, but is merely reasserting the grounds that were rejected in Defendants' initial removal attempt. Plaintiff notes that such is apparent from the fact that Defendants expressly adopted and incorporated the previous arguments asserted in the first removal petition. Plaintiff further asserts that because the email containing Plaintiff's settlement offer, serves only to add evidentiary support to Defendants' previous arguments, as opposed to revealing a new and different basis for removal, this case should be remanded and Plaintiff should be awarded fees and expenses incurred in opposing Defendants' unreasonable removal.

In opposition to Plaintiff's Motion to Remand, Defendants argue that the email sent by Plaintiff's counsel, which included Plaintiff's $1.5 million settlement demand, provides clear and unequivocal evidence that the amount in controversy is far in excess of $75,000. According to Defendants, courts routinely allow general theories to be replicated in second removal petitions when new facts, events, or "other papers" demonstrate the existence of federal jurisdiction. Defendants contend that the email constitutes an "other paper" which fundamentally changed the case because Plaintiff placed a value on his case for the first time. In addition, Defendants argue that if Plaintiff's position were accepted, then plaintiff attorneys could engage in bad faith practices to "hide" or "misrepresent" the true value of their cases in order to avoid federal jurisdiction.

## II. Discussion

United States "district courts ... have original jurisdiction of all civil actions where the matter in controversy exceeds the sum

4

or value of $75,000, exclusive of interest and costs, and is between ... [c]itizens of different States." 28 U.S.C. § 1332(a)(1). "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Generally, the party seeking removal bears the burden of showing that federal jurisdiction exists. Diaz v. Sheppard, 85 F.3d. 1502, 1509 (11th Cir. 1996). The Court's jurisdiction over a removed action is evaluated based on the record as it existed at the time of removal. Lowery, 483 F.3d at 1211. Because removal jurisdiction is strictly construed, all doubt is resolved in favor of remand. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994).

As indicated, Defendants' first attempt to remove this action under the first prong of Section 1446 (b)[2] was found to be lacking,

---

[2] 28 U.S.C. § 1446 (b) sets forth the procedure for removal of a civil action:

The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of the amended

5

and as a result, this case was remanded back to the Circuit Court of Dallas County. Defendants now seek to remove this case under the second prong of Section 1446(b), and the question presented is whether Defendants have provided different grounds for removal, or whether they are simply attempting to have the Court reconsider the same ground that was previously considered and rejected. The parties appear to agree that "a party is not entitled, under existing laws, to file a second petition for removal upon the same grounds, where, upon the first removal by the same party, the federal court declined to proceed and remanded the suit...." St. Paul & C. R. Co. v. McLean, 108 U.S. 212, 217, 2 S.Ct. 498, 27 L.Ed. 703 (1883). Thus, this dispute boils down to whether the settlement demand from Plaintiff's counsel constitutes a new ground for removal, or whether it is merely additional evidentiary support for the same ground that was previously considered and rejected.

In support of its position, Plaintiff relies on Nicholson v. Nat'l Accounts, Inc., 106 F. Supp. 2d 1269 (S.D. Ala. 2000), and similar cases, to argue that the settlement demand does not constitute a new ground for removal. In Nicholson, the defendant removed a state court action which involved claims for promissory estoppel, equitable estoppel, and fraud on the ground that the

---

    pleading, motion, order or other paper from which it
    may first be ascertained that the case is one which is
    or has become removable, except that a case may not be
    removed on the basis of jurisdiction conferred by
    section 1332 of this title more than 1 year afer
    commencement of the action.

28 U.S.C. § 1446 (b)

6

plaintiff's claims were completely preempted by the Employee Retirement Income Security Act ("ERISA"). The trial court held that the claims were not completely preempted because the plaintiff did not have standing to sue under ERISA. After the case was remanded to state court, the defendant sought a second removal following the plaintiff's deposition, and argued that the plaintiff's deposition testimony showed that the court was incorrect in holding that the plaintiff was not a participant or beneficiary with standing to sue under ERISA. The trial court recognized that 28 U.S.C. § 1446(b) "allows a defendant to remove a previously remanded case where subsequent pleadings or events reveal a new and different basis for removal." Id. at 1272 (citations omitted). The trial court went on to hold that 28 U.S.C. § 1446(b) must be read in harmony with 28 U.S.C. § 1447(d), which provides that a remand order "is not reviewable on appeal or otherwise," and that the defendant's second removal was "nothing more than a creative attempt to have the court reconsider its prior remand order." Id.

Defendants, on the other hand, rely on Sudduth v. Equitable Life Assurance Soc'y, 2007 U.S. Dist. LEXIS 63174 (S.D. Ala. Aug. 27, 2007) and similar cases to argue that the settlement demand from Plaintiff's counsel constitutes a new ground upon which Defendants are entitled to rely in support of the second Removal. In Sudduth, the defendants removed a case from state court on the ground that an individual defendant had been fraudulently joined in order to defeat diversity jurisdiction. The court granted the plaintiff's motion to remand after finding that the defendants had not met their burden on the issue. Later, the defendants sought to remove the

7

case a second time and argued that the plaintiff's deposition testimony clearly established that the individual defendant had been fraudulently joined. In denying the plaintiff's request for remand, the court held that "[28 U.S.C.] § 1446(b) allows [a defendant] to file successive removals based on [a] different factual basis," at least where different facts are obtained from the plaintiff. The court questioned how 28 U.S.C. § 1447(d) could impose a greater restriction on second removals than that imposed by 28 U.S.C. § 1446(b) and held that in any event, the <u>Nicholson</u> decision was not implicated where the second removal invoked a "new factual basis on which to determine the diversity issue." <u>Id.</u> The court specifically noted that although both remands centered on the theory of fraudulent joinder, the first removal questioned whether the plaintiff had even dealt with the individual defendant who was alleged to have been fraudulently joined whereas the second removal was based on the plaintiff's previously unavailable deposition testimony, which showed that the individual defendant did not say or do anything that would support a cause of action against him. Thus, there was a new factual basis for the motion, and the second removal was permitted.

The Eleventh Circuit has not addressed this issue; however, the three Circuit courts that have addressed this issue have held that successive removals are permitted when predicated on different grounds. See <u>In re Diet Drugs Prods. Liab. Litig.</u>, 282 F.3d 220, n.8 (3rd Cir. 2000); <u>Benson v. S.I. Handling Sys., Inc</u>., 188 F.3d 780, 782 (7th Cir. 1999); <u>S.W.S. Erectors v. Infax, Inc.</u>, 72 F.3d 489, 492 (5th Cir. 1996). "The prohibition against removal 'on the

8

same ground' does not concern the theory on which federal jurisdiction exists (i.e., federal question or diversity jurisdiction), but rather the pleading or event that made the case removable." S.W.S. Erectors, 72 F.3d at 492 (construing McLean, 108 U.S. at 217). A clear reading of these cases reflects that under 28 U.S.C. § 1446(b), a defendant's right to remove is triggered by the "receipt by the defendant" of an "amended pleading, motion, order or other paper" evidencing that the case is removable.

In the case at hand, Defendants' previous unsuccessful attempt to remove this case was premised solely on the Complaint. At that time, there was nothing before the Court that indicated that the amount in controversy exceeded the jurisdictional threshold. As a result, this case was remanded to state court. Back in state court, Plaintiff's counsel sent an email in which he offered to settle Plaintiff's claims for $1.5 million. Armed with this information, Defendants removed this case a second time. The undersigned finds that while this case was previously removed on the same theory, diversity jurisdiction, the grounds are different because in this instance, Defendants are essentially relying on a change in circumstances, namely the fact that Plaintiff and his counsel have communicated an offer to settle the case for $1.5 million. So, while the Court is revisiting the amount in controversy issue, it is doing so based upon different facts.

The facts of this case are strikingly similar to those present in Benson v. S.I. Handling Sys., Inc., 188 F.3d 780 (7th Cir. 1999). In Benson, the defendants had attempted unsuccessfully to have their case removed to federal court on the basis of diversity

9

jurisdiction. The trial court remanded the case after determining that the papers did not establish the amount in controversy. Later, during discovery in state court, the plaintiffs revealed that they had suffered more than $75,000 in damages; thus, the defendants sought to remove the case a second time. The trial court denied removal on the ground that successive removals are not permissible under 28 U.S.C. § 1446(b). In reversing the trial court, the Seventh Circuit held that a reading of 28 U.S.C. § 1446(b) implies that an unsuccessful earlier attempt to remove is not dispositive. According to the Court, "[a] premature removal may lead to a perfectly justified remand; but when matters change--for example, by dismissal of a party whose presence spoiled complete diversity of citizenship, or by a disclosure that the stakes exceed the jurisdictional amount--the case may be removed, provided only that it is less than one year old." Id. at 782-783.

The Seventh Circuit further observed that:

> The only effect of adopting an absolute one-bit
> rule would be to encourage plaintiffs to be coy...
> it may be hard for defendants to make and
> substantiate a realistic estimate early in the
> case if plaintiffs keep mum. That is why the
> district judge remanded following defendants'
> initial notice of removal. Plaintiffs then
> "fessed up", apparently believing that their
> earlier silence(coupled with the failed removal)
> had locked the case into state court. We see no
> reason to reward game-playing of this kind.
> For good or ill, Congress has authorized the
> removal of cases in which the parties are
> of diverse citizenship and the stakes exceed
> $75,000. When either side to such a suit prefers
> the federal forum, that preference prevails.

Id. at 783.

10

Like the defendants in Benson, the Defendants in the instant case are entitled to seek removal, for a second time, based on a change in circumstances, namely the fact that Plaintiff has offered to settle her claim for $1.5 million. Defendants herein are not merely reasserting that the Complaint establishes that the amount in controversy exceeds $75,000, they are arguing that Plaintiff himself has now placed the value of his case above the jurisdictional limit. Accordingly, the next question to be addressed is whether the settlement demand from Plaintiff's counsel qualifies as "other" paper under 28 U.S.C. § 1446(b) and is sufficient to trigger the second prong of the statute.

In Lowery, the Eleventh Circuit observed that while courts have not articulated a single test for identifying what constitutes "other paper" under 28 U.S.C. § 1446(b), numerous types of documents have been held to qualify. "They include: responses to request for admissions, Wilson v. Gen. Motors Corp., 888 F.2d 779, 780 (11th Cir. 1989); settlement offers, Addo v. Globe Life & Accident Ins. Co., 230 F.3d 759, 761-62 (5th Cir. 2000); interrogatory responses, Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998); deposition testimony; S.W.S. Erectors, Inc. v. Infax, Inc., 72 F. 3d 489, 494 (5th Cir. 1996); demand letters, Williams v. Safeco Ins. Co., 74 F. Supp. 2d 925, 929 (W.D. Mo. 1999) and email estimating damages, Callahen v. Countrywide Home Loans, Inc., No. 3:06-105, 2006 U.S. Dist. LEXIS 42860, 2006 WL 1776747, at *3-*4 (N.D. Fla. June 26, 2006)."

As noted supra, Defendants have submitted an email received from Plaintiff's counsel wherein he offers to settle Plaintiff's

11

claims for $1.5 million.  Defendants argue, and Plaintiff does not dispute, that settlement demands can qualify as "other papers" under Lowery.  As observed by the Court in Jackson v. Select Portfolio Servicing, Inc., 651 F. Supp. 2d 1279 (S.D. Ala. 2009), "the question is whether this specific settlement demand, given all the evidence presented, established by a preponderance of the evidence that the amount in controversy exceeds $75,000." Id. at 1281. "While [a] settlement offer, by itself, may not be determinative, it counts for something." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1097 (11th Cir. 1994).  "What it counts for, however, depends on the circumstances.  Settlement offers commonly reflect puffing and posturing, and such a settlement offer is entitled to little weight in measuring the preponderance of the evidence.  On the other hand, settlement offers that provide 'specific information ... to support [the plaintiff's] claim for damages' suggest the plaintiff is 'offering a reasonable assessment of the value of [his] claim' and are entitled to more weight." 651 F. Supp. 2d at 1281 (citations omitted).

In this case, Defendants have asserted that the settlement demand constitutes "other paper" that is sufficient to establish that the jurisdictional amount in this case exceeds $75,000. While Plaintiff argues that Defendants should be foreclosed from raising the amount in controversy issue again, Plaintiff has not disputed Defendants' assertion that the settlement demand constitutes "other paper" and is sufficient to establish the jurisdictional amount. Nor has Plaintiff made any attempt to disavow the settlement demand of $1.5 million.  In fact, Plaintiff's brief suggests that the

12

settlement demand was made after substantial discovery had been undertaken, and the parties were eyeing possible trial dates. (Doc. 4 at p.3). This certainly suggests that the settlement demand was not mere puffing made at the inception of the case. Accordingly, the undersigned finds that under the facts of this case, where Plaintiff has asserted a wrongful death claim, has submitted a settlement demand for $1.5 million after having conducted substantial discovery, and has made no attempt to disavow the settlement demand or to dispute Defendants' contention that the demand constitutes other evidence that the value of Plaintiff's claim is in excess of the jurisdictional amount, that the jurisdictional amount has been established. See AAA Abachman Enters. v. Stanley Steemer Int'l, Inc., 268 Fed. Appx. 864, 866-67 (11th Cir. 2008)(unpublished)(In a declaratory action, the Court held that were the plaintiff, who had submitted a settlement demand seeking more than $75,000 in damages, had the opportunity to submit evidence that the value of his rights was less than $75,000 but failed to do so, the plaintiff's own valuation of the monetary worth of his rights supported the defendant's assertion that the amount in controversy was satisfied)[3]; Katz v. J.C. Penney, 2009 U.S. Dist.

---

[3]In an earlier opinion, the Eleventh Circuit affirmed an order denying a motion to remand based on the plaintiff's failure to challenge the defendant's allegation of the amount in controversy and stated:

> Plaintiff presented no evidence to contradict defendant's damages calculations, nor did plaintiff deny the damages exceeded the jurisdictional amount when given the opportunity. Under these circumstances, the district court correctly determined that defendant carried its burden of establishing removal jurisdiction

13

LEXIS 51705 (S.D. Fla. June 1, 2009)(Court held that the defendant met its burden of establishing the amount in controversy based on information set forth in the plaintiff's pre-suit package, coupled with the plaintiff's failure to deny or otherwise contradict the information contained in the package). The undersigned thus recommends that Plaintiff's Motion to Remand be denied.

III.    **Conclusion**

Based upon a careful review of Plaintiff's motion, supporting briefs, and the briefs in opposition, the undersigned RECOMMENDS that Plaintiff's Motion to Remand be DENIED.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this **16th** day of **April**, **2010.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**

---

was correct [sic], and the court's decision to deny plaintiff's remand motion is affirmed.

Sierminski v. Transsouth Financial Corp., 216 F.3d 945, 949 (11th Cir. 2000).

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.  **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  **Opposing party's response to the objection.**  Any opposing

party may submit a brief opposing the objection within fourteen (14) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                        **/s/ SONJA F. BIVINS**
                                        **UNITED STATES MAGISTRATE JUDGE**